**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| **BRETT MACKLER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | |
| | : | |
| **Warden BRUCE CHAPMAN,** | : | |
| **Deputy Warden Ms. WILLIAMS,** | : | |
| **Captain NATHANIEL HARRIS,** | : | **CIVIL ACTION NO. 1:11-CV-45 (WLS)** |
| **Lt. BANKS,** | : | |
| **Counselor BROCK,** | : | |
| **RN HOLLOWAY,** | : | |
| **Sgt. JONES,** | : | |
| **Dr. BOBBY KNIGHT,** | : | |
| **Dr. MARK WINCHELL,** | : | |
| **Commissioner BRIAN OWENS, and** | : | |
| **Officer of Health Services TOM** | : | |
| **SITNICK,** | : | |
| **Defendants.** | | |

---

# ORDER & RECOMMENDATION

Plaintiff **BRETT MACKLER**, a prisoner at Calhoun State Prison in Morgan, Georgia, has

filed a *pro se* civil rights complaint under 42 U.S.C. § 1983.   For the reasons discussed below, it

is **RECOMMENDED** that the United States District Court **DISMISS** all but one of Plaintiff's

claims pursuant to 28 U.S.C. § 1915A. Because Plaintiff has stated a plausible Eighth Amendment

claim against Warden Bruce Chapman, Deputy Warden Allen, and Captain Nathaniel Harris for

"failure to protect," this action shall go forward, but only against these three Defendants.

## <u>STANDARD OF REVIEW</u>

Pursuant to 28 U.S.C. § 1915A(a), a federal court is required to conduct an initial screening of a prisoner complaint "which seeks redress from a governmental entity or officer or employee of a governmental entity." Section 1915A(b) requires a federal court to dismiss a prisoner complaint that is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief."

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and that the complaint "must contain something more . . . than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (internal quotations and citations omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In making the above determinations, all factual allegations in the complaint must be viewed as true. <u>Brown v. Johnson</u>, 387 F.3d 1344, 1347 (11th Cir. 2004). Moreover, "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be

liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998).

In order to state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, then the complaint is subject to dismissal. <u>See</u> <u>Chappell v. Rich</u>, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because the plaintiff's factual allegations were insufficient to support the alleged constitutional violation). <u>See</u> <u>also</u> 28 U.S.C. §1915A(b) (dictating that a complaint, or any portion thereof, that does not pass the standard in §1915A "shall" be dismissed on preliminary review).

## <u>STATEMENT AND ANALYSIS OF CLAIMS</u> [1]

Through the present Complaint, Plaintiff names eleven Defendants and makes a plethora of rambling allegations. However, reading his Complaint liberally, it appears Plaintiff alleges that, while incarcerated in Autry State Prison, officials (1) failed to protect him from a dangerous mental health inmate; (2) were deliberately indifferent to his medical needs and conspired to deny him adequate medical care; (3) denied him equal protection under the law; (4) violated his right to physician-patient confidentiality; (5) required him to live in unacceptable conditions of confinement;

---

[1] Plaintiff included a partial statement of his claim in his Recast Complaint [Doc. 8], and incorporated the additional pages completing "section V. Statement of Claim" in his original Complaint [Doc 1] by reference to complete his factual narrative.

(6) unlawfully assaulted him; (7) denied him due process prior to imposing disciplinary segregation; (8) violated prison grievance procedures; and (9) violated his First Amendment right to access to the courts by negligently handling legal forms. The Court will address each of these allegations in turn below.

### 1. Failure to Protect

Plaintiff's failure to protect claim arises from a physical altercation between Plaintiff and another inmate at Autry State Prison. Prior to the incident, Plaintiff reported his former roommate, Evander White, to prison officials for inappropriate behavior. Apparently, White suffered from mental health issues and habitually masturbated in their room, waking Plaintiff up during the night with noise and movement of his bed. On one specific occasion, White laughed uncontrollably throughout the night, repeatedly waking Plaintiff from his sleep. Plaintiff asked White to stop laughing, but he refused. Plaintiff finally summoned a guard and complained. The guard directed White to stop laughing, and when White failed to comply, the guard escorted him to "lock down."

After some period of time, officials released White back to the general population, and he returned to Plaintiff's building, though he was assigned a different room and roommate. Shortly after his return, White found Plaintiff near his cell and accosted him – hitting Plaintiff in the face without warning and knocking him to the ground. Plaintiff suffered injuries to his mouth and shoulder. Immediately after the altercation, Plaintiff told a corrections officer what had happened. White was again removed from the building, and Plaintiff was sent to Medical. Plaintiff later filed

a grievance regarding the matter, which was addressed by Lieutenant Brooks.[2]  Brooks discussed

the incident with Plaintiff and blamed a "procedural error" for White being returned to his building.

Plaintiff's Complaint now alleges that Warden Bruce Chapman, Deputy Warden Allen, and

Captain Nathaniel Harris knew that White suffered from mental health problems and had a history

of violence and physical altercations with Plaintiff, but nonetheless released White to Plaintiff's

building after Plaintiff complained and caused White to be placed in "lock down." Plaintiff further

alleges that "prison officials freely let cell-house predators rule the cell blocks," "failed to respond

to Plaintiff's basic need for a safe environment," and knowingly placed a "level 3 mental health

inmate" in the general population with "callous disregard for other inmates' safety."

It is, of course, well-settled that "[a] prison official's 'deliberate indifference' to a substantial

risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S.

825, 828-29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Prison officials, therefore, have a duty to

protect prisoners from each other. Id. at 833.  However, in order to constitute "deliberate

indifference," the prison official must have subjective knowledge of the risk of serious harm to the

plaintiff and nevertheless fail to reasonably respond to the risk. Id. at 837-38.  A prison official must

also have a sufficiently culpable state of mind to be deliberately indifferent. Carter v. Galloway, 352

F.3d 1346, 1349 (11th Cir. 2003).

Based on the allegations made here, the Court finds that Plaintiff states a plausible claim for

---

[2] The Complaint lists "Lt. Banks" as a Defendant but repeatedly refers to "Lt. Brooks" in the allegations.  For the purpose of this Order and Recommendation, the Court assumes that Lt. Banks and Lt. Brooks are one and the same.

failure to protect. The Court, therefore, will allow this claim against Warden Bruce Chapman, Deputy Warden Allen, and Captain Nathaniel Harris to proceed beyond the frivolity review stage. Though Deputy Warden Allen was included within Plaintiff's allegations, Plaintiff failed to list him as a defendant. The Clerk will thus be directed to add Deputy Warden Allen as a party defendant.

To the extent that Plaintiff intends to state additional claims for failure to protect based upon verbal taunts by other inmates, he has failed to state claims upon which relief may be granted. A plaintiff must allege more than that he has been subjected to verbal taunts in order to make a claim that jailers violated their duty of protection or deprived a him of his constitutional rights. <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989). Accordingly, Plaintiff's failure to protect claim arising from the incident with Mr. White may continue, but it is otherwise **RECOMMENDED** that any failure to protect claim based solely upon the verbal taunts by other inmates, unrelated to the White incident, be **DISMISSED** pursuant to 29 U.S.C. §1915A(b)(1) for failure to state a claim.

### 2. Failure to Provide Adequate Medical Care

Plaintiff next claims that Defendants Warden Bruce Chapman, Deputy Warden Allen, Deputy Warden Williams, Captain Nathaniel Harris, R.N. Halloway, Dr. Bobby Prince,[3] Dr. Mark Winchell, Department of Corrections Commissioner Brian Owens, and Department of Corrections Director of Health Services Tom Sitnick also violated his Eighth Amendment rights by failing to

---

[3] The Complaint lists "Dr. Bobby Knight" as a Defendant but refers to "Dr. Bobby Prince" in the allegations. For the purpose of this Order and Recommendation, the Court assumes that Dr. Bobby Knight and Dr. Bobby Prince are the same person.

provide him adequate care and/or conspiring to deprive him of adequate care. He asserts that officials did not provide adequate medical care or pain medication for his injured shoulder, refused to provide him with a third blanket profile, and failed to provide him with soft shoes.

The allegations in Plaintiff's Complaint reveal that prison officials transported him to Mitchell County Hospital in Camilla, Georgia for x-rays the same evening he was attacked by White. A physician there advised Plaintiff that he would not need stitches for his mouth and that he only suffered an injury to the ligaments and tendons in his shoulder. She then placed an ill-fitting sling on Plaintiff's shoulder to isolate it and advised Plaintiff to tell the prison physicians that he needed to see an orthopedic surgeon immediately. Before he left, Plaintiff received a shot for pain. When he returned to Autry State Prison, medical staff again examined Plaintiff. They likewise opined that Plaintiff indeed needed to see an orthopedic surgeon and gave Plaintiff another pain pill.

The next morning, Plaintiff returned to Medical, where the staff gave him a smaller sling and showed him how to use it properly. Plaintiff took a mild pain killer, but it was insufficient to stop his pain. Two guards then took Plaintiff to Premier Orthopedics in Albany, Georgia, where additional x-rays were taken. The physician told Plaintiff that he would need to see another doctor in the group who was on vacation. They then made an appointment for Plaintiff with the other physician for the following week.

A week later, two guards escorted Plaintiff back to Premier Orthopedics in Albany, Georgia, where Plaintiff met with Defendant Dr. Bobby Prince. After examining Plaintiff's shoulder, Dr. Prince diagnosed it as a type-III shoulder separation. He advised Plaintiff that there was nothing to

do but to "stabilize" it and that he would see Plaintiff again in three weeks – at which time they would discuss whether surgery was necessary to "kill the nerve in his shoulder."  Plaintiff alleges that Dr. Prince later explained to a nurse at Autry that the bones in Plaintiff's "shoulder had separated" and that as long as Plaintiff "had full motion of the arm, he was not going to do anything about it."  Dr. Prince admitted that he could do surgery on the shoulder but "wouldn't do it" and stated that the shoulder "would heal itself."  Plaintiff complained to the medical staff at Autry and did not trust Dr. Prince.  The staff recommended that he continue with the recommended physical therapy exercises and continued to give Plaintiff pain medication.

Weeks later, Plaintiff put in a medical request to be taken to Augusta, Georgia for treatment of his shoulder.  Plaintiff alleges that he still suffered from pain and needed surgery. In response to his complaints, Defendant Nurse Holloway advised Plaintiff that nothing else needed to be done for him.  Later that week, prison officials transferred Plaintiff to Georgia State Prison to see Defendant Dr. Mark Winchell.  Dr. Winchell also advised Plaintiff that he would not operate on the shoulder.  According to Plaintiff, Dr. Winchell stated that surgery was only done on younger people "because they could heal better."  A month or so later, Plaintiff saw yet another prison doctor, Dr. Akens, who simply encouraged Plaintiff to keep doing finger exercises, warning him that if he lost mobility in his arm he would never regain it.  Dr. Akens then removed Plaintiff's "chronic care and second blanket profiles."  Shortly thereafter, staff stopped providing Plaintiff with pain medication and failed to provide Plaintiff with a copy of a pamphlet explaining his shoulder condition.

Plaintiff's allegations may indeed show that he suffered an  injury while incarcerated at

Autry State Prison. However, in order to state a viable Eighth Amendment claim for inadequate medical treatment, Plaintiff must allege acts or omissions amounting to deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976). These allegations must satisfy both an objective and subjective component. Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), overruled in part on other grounds, Hope v. Peltzer, 536 U.S. 730, 739 (2002). Thus, to survive a frivolity review, a plaintiff first must allege that he has an objectively serious medical need which poses a substantial risk of serious harm if left unattended. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). A medical need is serious if it has been diagnosed by a doctor as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. Hill, 40 F.3d at 1187.

To avoid dismissal, the plaintiff's allegations in the complaint must also suggest that the defendant had subjective knowledge of a risk of serious harm to the plaintiff and disregarded that risk. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Rather, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). A prisoner, therefore, may not establish a constitutional violation simply because he "desired different modes of treatment" than that which was provided to him. Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985); see also, Estelle, 429 U.S. at 105; Westlake v. Lucas,

537 F.2d 857, 860 n.5 (1st Cir. 1981) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")

Here, even taking all of his allegations as true, Plaintiff's Complaint fails to state a viable claim for denial of adequate medical care.  Though he has alleged a medical need, he failed to sufficiently allege that Defendants were deliberately indifferent to this need.  Plaintiff saw numerous physicians and other healthcare professionals over a six-month period, and all advised Plaintiff that surgery was not needed. Plaintiff was given pain medication and advised of physical therapy exercises which would improve his condition.   It appears, of course, that Plaintiff would prefer to have surgery on his shoulder.  However, as indicated above, Plaintiff's mere disagreement or disappointment with the course of treatment chosen by his physicians is insufficient to state a claim for denial of medical care.  No constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment.  See Harris, 941 F.2d at 1505.

It is therefore **RECOMMENDED** that Plaintiff's claims for denial of medical care for his injured shoulder be **DISMISSED** pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim.

Although it is unclear whether Plaintiff intends to state additional claims for denial of medical care, his Complaint also alleges that he turned in medical requests for soft shoes and a third blanket on multiple occasions but received neither.  The Court finds that, with respect to these allegations, Plaintiff does not set forth sufficient facts in the Complaint which indicate that he had a diagnosed or obvious medical problem posing a substantial health risk if left unattended.  Nor does

he allege sufficient facts suggesting that Defendants were deliberately indifferent to his medical needs. Thus, to the extent Plaintiff attempted to state claims based on prison officials' failure to provide him with soft-soled shoes or a third blanket, it is also **RECOMMENDED** that these claims be **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. §1915A(b)(1).

Finally, Plaintiff lists a claim stating that Defendants "conspired" to deny him medical care. The Complaint, however, includes no factual allegations to support this claim, and it is thus **RECOMMENDED** that his conspiracy claim be **DISMISSED** as well.

### 3. Denial of Equal Protection

Plaintiff's Complaint also vaguely lists a claim against prison officials for "denial of equal protection." He has failed, however, to allege specific facts constituting a valid equal protection claim. To state a claim for a violation of the Equal Protection Clause, an inmate must allege that other similarly situated inmates received more favorable treatment and that the discriminatory treatment was based on some constitutionally protected interest. Jones v. Ray, 279 F.3d 944, 946-947 (11th Cir. 2001). Plaintiff's bare allegations have simply not alleged anything which could be construed as supporting an equal protection claim.

To the extent Plaintiff may have possibly thought he could state an equal protection claim based on Dr. Winchell's statement that shoulder surgery was only performed on younger patients, the Court likewise finds that the Complaint fails to state a claim. According to the allegations in the Complaint, the physician's statement merely explained the reason for the course of treatment chosen. This would again appear to be "a classic example of a matter for medical judgment." See

Estelle, 429 U .S. at 107.

Accordingly, it is hereby **RECOMMENDED** that Plaintiff's equal protection claim also be **DISMISSED** from this action under 28 U.S.C. §1915A(b)(1) for failure to state a claim.

### 4. Physician-Patient Confidentiality

Plaintiff's Complaint further alleges that his right to "patient confidentiality" was violated when prison guards remained in the examination room as he spoke with physicians. Plaintiff thus appears to assert that he has a constitutional right to privacy based on the physician-patient privilege. This privilege, however, is "an evidentiary rule which does not confer substantive constitutional rights on [P]laintiff." Low v. Stanton, 2009 WL 595985 *16 (E.D. Cal. Feb. 25, 2009); Floyd v. Emmet County Correctional Facility, 2006 WL 1429536, at *4 (W.D. Mich. May 23, 2006); Johnson v. O'Donnell, Inmate Complaint Reviewer, 2001 WL 34372892, at *10 (W.D. Wis. Aug.24, 2001) ("The physician-patient privilege is inapplicable in the context of a prisoner who does not wish security guards to be present at his medical examination."). The Court thus finds this claim to be frivolous and **RECOMMENDS** it be **DISMISSED** as such pursuant to 28 U.S.C. §1915A(b)(1).

### 5. Conditions of Confinement

Plaintiff's Complaint also references multiple allegations about the conditions of his confinement. Plaintiff alleges that his cell was a "sweat box." He in fact filed a grievance about the temperature of his cell and was told that there was adequate circulation and nothing would be done. Plaintiff's Complaint also includes brief allegations that prison officials or officers wrongly denied him a bottom bunk, failed to give him snacks or a shower for three days while he was in "lock down,"

took his sheets when they transferred him from "lock down," failed to investigate when other inmates stole his fan[4] and rummaged through his belongings, and disposed of some of his personal property during a cell transfer because he did not have his name on it.

Clearly, the Eighth Amendment's cruel and unusual punishment standard applies to the conditions of a prisoner's confinement. Chandler v. Crosby, 379 F.3d 1278, 1288-89 (11th Cir. 2004). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. See Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "[T]he Constitution does not mandate comfortable prisons." Id. All that is required is that they be humane. Farmer, 511 U.S. at 832. The Eighth Amendment is only violated when a prisoner is deprived of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. Thus, to be held responsible for an Eighth Amendment violation, a prison official must be deliberately indifferent to a prisoner's safety. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991).

There is nothing in Plaintiff's rambling allegations about his prison conditions to support an Eighth Amendment claim. To prevail on an Eighth Amendment claim regarding the conditions of confinement, a plaintiff must demonstrate that (1) the conditions of which he complains are "sufficiently serious" from an objective standpoint, and (2) prison officials "acted with a sufficiently culpable state of mind with regard to the conditions at issue." Chandler, 379 F.3d at 1289. A condition is "sufficiently serious" if society would consider it "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to [it]." Id. (cites omitted)

---

[4] This appears to be the only claim against Defendant Sgt. Jones.

Plaintiff's complaints, even viewed collectively, are not so grave that exposure to these conditions "violates contemporary standards of decency." Id. Indeed, the allegations in Plaintiff's Complaint regarding the temperature of his cell, the lack of snack or shower for three days, the temporary loss of his sheets, and the theft and loss of some of his personal belongings certainly do not qualify his prison condition as inhumane. "At best, such conditions sound in negligence, and do not deprive Plaintiff 'of the minimal measure of life's necessities,' nor do such conditions represent something that modern society would find intolerable." Brown v. Pastrana, 2008 WL 4097615 *3 (S.D. Fla. Sept. 4, 2008) (unpublished) (citing Chandler, 379 F.3d at 1289-90). Accordingly, Plaintiff cannot, even taking all of his allegations regarding the conditions of his confinement as true, establish the first prong required to state a claim.

For this reason, it is **RECOMMENDED** that Plaintiff's claims regarding his conditions of confinement be **DISMISSED** pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim.

### 6. Assault by Officers

Plaintiff's Complaint additionally includes allegations that he was unlawfully "assaulted" by prison officers. He briefly alleges that Lt. Brooks shouted at him in a high-pitched voice on one occasion, that Captain Williams shouted at him for taking extra biscuits, and that, while in "very close quarters" in the security office, approximately seven correction officers shouted at him so intensely that he could feel their breath on either side of his face. In this last instance, Plaintiff was so fearful that he would be "assaulted at any moment" that he immediately "stuck both hands out behind [him] and bent over at the waist." The officers then stopped the abusive behavior, and

Plaintiff "assumed the standing position."  In addition to these verbal "assaults," Plaintiff alleges that Sergeant Miles[5] once allowed a spring-loaded door to hit his injured shoulder and that he was subjected to "flashlight torture" one night by Officers Hall and King.  According to the Complaint, one of these officers "kept flicking a flashlight in [Plaintiff's] face" while he tried to sleep.

The Eighth Amendment clearly "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification . . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense."  Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes, 452 U.S. at 346).  To state an Eighth Amendment claim in this context a plaintiff must allege conduct by defendants that was objectively "harmful enough" to establish a constitutional violation and that defendants "act[ed] with a sufficiently culpable state of mind," i.e., that they acted "maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  With this type of claim, a plaintiff can establish a constitutional violation even in the absence of serious or significant injury.  Id. at 9.  Indeed, the law recognizes that certain forms of torture are capable of inflicting pain without leaving any mark or tangible injury.  Id.  The degree of injury received is relevant, however, in determining whether more than *de minimis* force was used by officers.  See id., 503 U.S. at 10.

Here, Plaintiff alleges conduct by corrections officers that may have been unpleasant to experience.  In large part, however, his allegations involve no physical contact with officers

_____

[5] Sergeant Miles is not named as a party in this case, and it is unclear whether Plaintiff intended to state a claim against him individually.  The Court will nonetheless address this allegation as a potential claim against Sergeant Miles .

whatsoever.  As a general rule, allegations of mere threatening language and gestures in the prison setting do not state a claim of federal constitutional dimension.  See Hernandez v. Fla. Dep't of Corr., 281 Fed. Appx. 862, 866 (11th Cir. 2008) (per curiam) (citing Edwards, 867 F.2d at 1274 n.1) ("[V]erbal abuse alone is insufficient to state a constitutional claim.").  Thus, despite the age-old saying, "something more akin to sticks and stones is required to state an Eighth Amendment cause of action." Martinez v. Zadroga, 213 Fed. Appx. 729, 731 (10th Cir. 2007) (unpublished) (citing McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001).

The one instance in which Plaintiff does allege physical contact – when Sergeant Miles allowed a door to hit Plaintiff's shoulder – also does not rise to the level of a constitutional violation. The extent of force was *de minimis* and, by his own admission, Plaintiff suffered no injury. Moreover, there is no allegation that Sergeant Miles acted "maliciously and sadistically to cause harm" when he allowed the door to close.  Even if Sergeant Miles was unapologetic, negligent *de minimus* injury of an inmate does not amount to a constitutional violation.  See Owens v. City of Atlanta, 780 F.2d 1564, 1566 (11th Cir. 1986).

Plaintiff's final allegation is a novel one.  He alleges that one night Officers Hall and King "tortured" him by "flicking a flashlight in [his] face" while he tried to sleep.  The officers did not deny the conduct and later laughed about it.   Although unprofessional, this annoying prank is not a constitutional violation.  See Sharp v. Prange, 2007 WL 2298471 *1 (S.D. Ill. Aug. 7, 2007). Plaintiff's allegation is that this event only occurred on one occasion and caused him no temporary or lasting injury.  While certainly in some extreme cases the conduct of shining a light in a prisoner's

eyes may rise to the level of cruel and unusual punishment, the conduct alleged in Plaintiff's Complaint would not qualify as "torture" by an objective standard and "is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10. Thus, it cannot be the basis of an Eighth Amendment claim.

It is therefore **RECOMMENDED** that Plaintiff's claims based on these allegations be **DISMISSED** pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim.

### 7. Denial of Due Process

Though little detail is provided, Plaintiff appears to claim that Captain Williams, who is not named as a party to this action, once violated his right to due process by failing to provide him with a segregation hearing prior to placing him in "lock down." Plaintiff also alleges that, on another occasion, Defendants Lt. Brooks and Counselor Brock denied him a fair hearing on a disciplinary matter. Plaintiff assets that both Defendants were biased against him in the disciplinary hearing. Plaintiff had previously filed a grievance against Lt. Brooks and had filed multiple grievances with Counselor Brock, who was assigned as his advocate.

In Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court found that a prisoner can be deprived of his liberty so as to be entitled to due process under the Constitution in two circumstances: (1) when the condition is so severe that it essentially exceeds the sentence imposed by the court; and (2) when the state has conferred a certain benefit on prisoners by statute or administrative policy and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Id.; Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

Here, Plaintiff's Complaint makes a singular reference to a time when Captain Williams harassed him for having extra biscuits, shouted at him, and spontaneously placed him in "lock down" without making a disciplinary report or holding a segregation hearing. Plaintiff remained in segregation for three days. This experience was surely unpleasant, however, it was not an atypical or significant hardship on Plaintiff in relation to the "ordinary incidents of prison life." Thus, in subjecting him to this penalty, Captain Williams did not deprive Plaintiff of a constitutional liberty interest that had the effect of entitling him to due process procedures. See Sandin, 515 U.S. at 486, (holding that thirty-day disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); Walker v. Grable, 2011 WL 135703 *1 (11th Cir Jan. 18, 2011) (unpublished) (holding that eleven days of administrative segregation did not involve a loss of a due process liberty interest).

Likewise, even when a disciplinary hearing is provided, a prisoner may not state a constitutional claim based upon any perceived bias or conflict of interest in the handling of the hearing. "[T]he degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally. Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process." Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) (citing Cleavinger v. Saxner, 474 U.S. 193, 203-04, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). Accordingly, Plaintiff's perceived bias in the handling of his

disciplinary hearing would not support a due process claim.

For these reasons, the Court **RECOMMENDS** that Plaintiff's due process claims be **DISMISSED** pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim.

### 8. Violation of Grievance Procedures

For many of the allegations discussed above, Plaintiff filed informal and formal grievances. Plaintiff's Complaint now alleges Defendants Lt. Brooks and Counselor Brock unlawfully violated the prison grievance procedures in accepting and processing these complaints. Plaintiff alleges that Lt. Brooks improperly read his informal grievance aloud for other officers to hear and demanded that he sign it. With respect to Counselor Brock, Plaintiff alleges that he, on more than one occasion, failed to have grievance forms when Plaintiff requested them, refused to allow Plaintiff to resubmit grievances previously addressed by prison officials, incorrectly told Plaintiff that he could not appeal his grievance, and accepted grievances from Plaintiff without telling him that they must be signed.

While this may all be true, these allegations do not amount to a constitutional claim. A prisoner has no constitutional right to participate in prison grievance procedures. See Wildberger v. Bracknell, 869 F.2d 1467, 1467-68 (11th Cir. 1989). Nor do prisoners have any constitutional right to access of prison grievance forms. Cable v. Wall, 2010 WL 1486494 *7 (D. R.I. March 18, 2010) (slip copy). Thus, a prison official's failure to properly process or respond to a grievance or appeal of a grievance is not actionable under 42 U.S.C. § 1983.

It is therefore **RECOMMENDED** that Plaintiff's claims based upon violations of the prison grievance procedures be **DISMISSED** under 28 U.S.C. §1915A(b)(1) for failure to state a claim.

### 9. Negligent Provision of Legal Forms

Finally, Plaintiff's Complaint appears to include a First Amendment claim for denial of access to the Courts. There are very few allegations regarding this claim; Plaintiff merely describes difficulties he had in locating and obtaining certain legal forms.

Inmates do have a First Amendment right to "petition the Government for a redress of grievances." <u>See</u> U.S. Const. Amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."). This right, which is more informally referred to as a "right of access to the courts," requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." <u>Bounds v. Smith</u>, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), modified on other grounds, <u>Lewis v. Casey</u>, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); <u>see</u> <u>also</u> <u>Bourdon v. Loughren</u>, 386 F.3d 88, 92 (2d Cir. 2004) (cites omitted).

However, this right is not "an abstract, freestanding right to a law library or legal assistance" and cannot ground a § 1983 claim without a showing of actual injury. <u>See</u> <u>Lewis</u>, 518 U.S. at 351. In other words, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." <u>Id.</u> Therefore, to state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. <u>Id.</u> at 353.

Here, Plaintiff's Complaint fails to allege either deliberate indifference or malicious denial of legal forms by prison officials or that he suffered any actual injury. At best, Plaintiff describes a frustrating experience locating forms negligently misplaced, demonstrating only that his "prison's law library or legal assistance program is subpar in some theoretical sense." His Complaint, therefore, fails to state any legitimate First Amendment claim, and it is **RECOMMENDED** that this claim be **DISMISSED** pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim.

## CONCLUSION

For all of the aforementioned reasons, the Court hereby **RECOMMENDS** that all of Plaintiff's claims – with the exception of his Eighth Amendment claim against Defendants **Warden Bruce Chapman, Deputy Warden Allen,** and **Captain Nathaniel Harris** arising out of the attack by Evander White – be **DISMISSED**. This, as a consequence, dismisses **Deputy Warden Williams, Lt. Banks (or Lt. Brooks), Counselor Brock, R.N. Holloway**, **Sgt. Jones, Dr. Bobby Knight (or Dr. Bobby Prince)**, **Dr. Mark Winchell**, **Department of Corrections Commissioner Brian Owens,** and **Department of Corrections Director of Health Services Tom Sitnick** from this action entirely.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to any of the recommendations contained herein with the district judge to whom this case is assigned, within fourteen (14) days after being served a copy of this Order.

The Court finds that Plaintiff states a plausible claim against Warden Bruce Chapman, Deputy Warden Allen, and Captain Nathaniel Harris. Though Deputy Warden Allen was included in

Plaintiff's allegations, Plaintiff failed to list him as a defendant. The Clerk of Court is thus **DIRECTED** to add Deputy Warden Allen to the style of this case as a party defendant.

It is further **ORDERED** that service be made against **Warden Bruce Chapman**, **Deputy Warden Allen**, and **Captain Nathaniel Harris**, and that they file a Waiver of Reply, an Answer, or such other response as may be appropriate under Rule 12 of the FEDERAL RULES OF CIVIL PROCEDURE, U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of their duty to avoid unnecessary service expenses and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall at all times keep the clerk of this court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings filed herein.

## DUTY TO PROSECUTE ACTION

Plaintiff is advised that he must diligently prosecute his complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is

represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a <u>certificate of service</u> indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## **DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the defendants from whom discovery is sought by the plaintiff.  The defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the FEDERAL RULES OF CIVIL PROCEDURE.  The deposition of the plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

**IT IS HEREBY ORDERED** that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendants and granted by the court.  This 90-day period shall run separately as to each plaintiff and each defendant beginning on the date of filing of each defendant's answer or dispositive motion (whichever comes first).  The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that

discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: <u>except with written permission of the court first obtained</u>, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the court absent the filing of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the court.

## DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee

is paid in full, provided the amount in the account exceeds $10.00.

**IT IS FURTHER ORDERED AND DIRECTED** that collection of monthly payments from plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from the plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event plaintiff is released from custody and fails to remit payments. In addition, plaintiff's complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED and RECOMMENDED**, this 11th day of May, 2011.


*s/THOMAS Q. LANGSTAFF*
UNITED STATES MAGISTRATE JUDGE

jlr